This morning is case number 417-0395, and for the appellant we have Mr. Draper, and for the appellee we have Ms. Lebrecq. Is that the correct pronunciation? Yes, ma'am. Alright, thank you. You may proceed, counsel. Thank you, and may it please the court and counsel, my name is Carl Draper. I'm here on behalf of Joshua Myers, who brings this administrative law question before the court in his attempt to apply for a non-resident concealed carry license after he had moved to the state of Florida. I want to focus all my argument primarily to the fundamental question in the case, which is whether the state police engaged in illegal rulemaking or actually failed to engage in proper rulemaking in its process of determining how to conform to the requirements of section 40 of the concealed carry law. Now that law states, and this is the key question before the court, the department shall, by rule, allow for non-resident license applications from any state with laws related to firearm ownership possession and carrying that are substantially similar to the requirements to obtain a license under this act. And it goes on to state that a resident of such a state approved by the department may apply for a non-residential license. The focus of the error in how the state police managed the program was demonstrated by the process that they used, which effectively bypassed either of the two alternative ways to comply with this statutory mandate. And we identified in our briefs that the way to make that determination was to either engage in interpretive rulemaking or B, to view these rules that they did adopt as procedural for developing a record that would let the agency apply the law to a given state of facts. The department failed to do either in this case, resulting in Josh Myers not only having his Illinois license that he previously enjoyed revoked because he lived in Florida, but being blocked from even an attempt to fill out the application and to demonstrate that he qualified under this section of the law. These are policies that were not promulgated. In other words, let's go back to the interpretive rulemaking process. We identified it very clearly exemplified in the Windy City case that we cited. Agencies can indeed take their statutory mandates and engage in an analysis of something that they are to determine for qualifiers and actually publish rules. These are done in the example of Windy City in terms of determining which games or games of gambling machines that are regulated by state law. And they have a test that they apply and do that. If I could interrupt you, let's take a look at the statutory language. And so under 40B, we look at the fact that the statute says that we need to have a rule that allows a nonresident to apply for an application as long as they're residing in a place that contains substantially similar requirements as in Illinois. So my question is, if the determination is made that it is not substantially similar, does the person have the right to even apply? Or does that mean that if you're not in a substantially similar state, there is no right to even apply? Well, the answer to that, I think, is what we were just talking about with the Windy City case. Had the department engaged in interpretive rulemaking, then it would have had to make an analysis state by state of which laws were similar, which laws were not similar. And then it could have, by an interpretive rule, like in Windy City, gone through Jay Carr's process to announce in a rule which states did and did not comply. The state police didn't do that. So they have to do that in advance of receiving an application from a citizen of Montana? If they're going to view their authority or decide to implement that decision-making process, yes, they would have had to adopt the interpretive rule first. And these are done with other kinds of things like breathalyzer feed devices. Are they substantially similar? So there is a requirement that before they received an application from a given state, they have had to analyze the laws of each concealed carry state and make a determination whether or not it's substantially similar to a particular state? They would have, and that question didn't come up in the trial below, but my recollection of the law... That's what you're arguing to us, isn't it? Right. But my recollection of the law was the statutory mandate was that they were given, I believe, a year in which to develop their rules. So the statute even contemplated they would have to take some time to come up with the procedural rules, or in this case an interpretive rule, and they would have had time to do that. But what is the harm in waiting to see if they ever receive an application from Montana and then looking at the Montana law and making that determination? I think there's absolutely nothing wrong with that, and that's what should have happened here. But what that process would entail would be to follow what the state police brief suggested, which is the rules they did adopt are procedural, and they argued that what they are doing is applying the law to a given set of facts. Now, what facts are those? The facts would be the ones contained in an application initially, and then there would be an initial determination if you qualify or you don't qualify, and following... Well, if I understand the hypothetical, it's that they would make that determination when such an application was presented. Yes. Their policy that they're following that's not promulgated in the rules is to have a computer program that prevents the application from being submitted, and therefore, as they argued, we never received an application from Josh Myers, so we had no duty to ever respond to it. The problem with that is that the statute... Their state, their present state of residence is substantially similar before they bother to go through the application process? Yes, they might, but they also might disagree with that determination, and because of the way this was handled, citizens, residents in Illinois or in other states had no opportunity to ever respond. To do that, they should have gone through the interpretive rulemaking process, and the rule itself, as promulgated, would list the states. That's what would happen. Or the rule would have provided the very procedure for that analysis to be done, like in Windy City, that there has to be a study of the machine, and then the interpretive rule lists which machines are and aren't regulated. So we know we have this survey process. Right. What's the problem with that? The problem with the survey process isn't... Let me tell you, if I may, what is okay with it and what's not acceptable. There is no reason why the state police couldn't use the survey as an instrument that's helpful in making determinations. But if their rules are procedural, and because they didn't do an interpretive rule saying, definitively, Florida is, by rule, not one of the states where we will accept applicants, then there's going to have to be an analysis after the fact. And the opportunity, which under Section 10F of the Act mandates that if an applicant is being denied, is to be given the reasons why and a hearing. Had Section 10F... If the applicant is allowed to apply, if they're eligible to apply. But the statute doesn't say people are prohibited from applying. It says that the department shall, by rule... Right, but the statute directed the state police to do that by rule and they did not do so. So if we accept their argument that they have procedural rules, then the process would be very simple. You want that rule to list 49 states. And so would that rule change on a yearly basis or whenever states decide to... Yes. And in fact, that would mean constant rulemaking. And that's even something that was identified in the appellee's brief as an issue, that the laws may be evolving. And so you would have this process going on, going on, and on, going on. But the whole point of promulgation with an interpretive rule still allows the public input to correct errors, to provide information, to provide argument about which states do and don't qualify. And that's because there are legitimate questions about whether Florida does or doesn't have laws that are substantially similar. And look at the process they used. They sent the letter to the Department of Agriculture in Florida, which is in fact the agency, oddly enough, is the agency that regulates licensure of firearms. But the response didn't come from the Department of Agriculture. The response came from their Department of Police without explanation. And that was just taken as true, even though it's not the right question. Doesn't the appellee explain that in their brief? There's no explanation why the state police... That's the agency that handles this type of thing? There's no explanation why the state police answered. We in the Department of Agriculture is the agency that regulates. Well, here's a difficult... I haven't thought of this in your application of the Windy City case that you've cited now repeatedly. Windy City is a fact-based case. That is, does a particular machine, given the facts of how that machine is set up, meet the gambling criteria? There's no similar analysis done here. Indeed, I don't know why it matters that the state police have chosen to ask the state of Florida. It seems to me that this is a question of law, which is not fact-based at all that lawyers can and do resolve. Someone from the state police can look at the Florida law and make that determination. Could that person help? The statute mandates that the Illinois state police make the determinations. And what happened with the survey isn't a problem because they used the survey as a starting point. The statute requires a survey? The statute does not require a survey. It's silent on that point. Let me be more direct. Isn't this a question of law as to what Florida law requires and whether it's substantially similar to Illinois law? Aren't these legal questions? These are legal questions, but the record shows the Illinois state police never made that legal determination. They used the survey to get information. And, in fact, when Josh Meyers in his first e-mail stream... How would the record show that? That is, if the Illinois state police had some lawyer or some official on board who is comparing state laws and determined that Florida was not substantially similar, other than saying, no, it's not substantially similar, is there some requirement to reveal the mechanism and who this person was who decided that? I believe even the appellee's brief referenced that they relied on the survey because they did not... That's not my question. My question is, does this matter and does the statute require it? The statute requires the state police to make the determination because they have to do it by rule. Now, they have an attorney working for the state police who compared the laws and decided Florida isn't substantially similar. If not, what else do they require to do? But we know that's not what they did. What if they did it? How do we know that? What if they... Mr. Draper. On the appellate court, I'm entitled to ask you hypotheticals. What if that's what happened in this case? Would that be in violation of the statute? If someone at the state police, a lawyer perhaps, analyzed Florida law and made the determination, the agency still had to adopt that by rule. So they could either do it through the interpretive rule process, which isn't confined to just fact-based things. Are these gambling machines similar? But it could reasonably be used for interpreting law. That would have been a fine process, but they didn't do that. So they have to go through JCAR on the determination that Florida law is not substantially similar? If they chose to do it that way. I've got a much better suggestion based on their brief because there are two alternatives. The second alternative, which is their own argument that they're trying to apply facts and law and come up with an interpretation through procedural rules. But if there were procedural rules, then you need to allow the fact to get initiated with an application. What facts are at issue in this case? I'm sorry? What facts are at issue in this case? Well, in this case, the record that would have to be analyzed is a legal question. Are there any facts at issue in this case? Any facts that determine the outcome? No, there are no facts that are at issue. But there are the questions of law about which states are substantially similar and how the agency is supposed to apply that and comply with Section 40's requirement they do that by rule. So what should happen is they should have accepted the application. They could have used their survey as their determination. Florida is not similar. We have a survey from them saying so. And if Josh Myers was dissatisfied with that answer, he would have had the burden of asking for an administrative hearing and he would have had the burden of establishing the legal question. It's a straightforward application of administrative law principles that are replete throughout all agencies and consistent with what the law mandated in the Concealed Carry Act in Section 40 that this be done by rule. Here's what was done instead. They did the survey, and when Josh Myers asked, I want to apply for a non-resident license then if you're canceling my existing license, and they said you can't. If you want to be able to apply, you need to ask Florida to send a different set of answers to the questionnaire. So what the state police did was completely abrogate their duty and defer to the state of Florida of making their determination for Illinois, whether or not Florida's laws were similar. I'm telling you. I wouldn't have to accept. And not only that, with the multiple surveys that asked different questions, we also found in the record there are, I believe, four states that never responded, and because they never responded, the individuals in those states have absolutely no rights because of the process that's being used. It's inconsistent with either interpretive rulemaking or procedural rulemaking that allows applications and puts the burden of proof where it belongs, which is on the applicant. Burden of proof on what? If there are no facts, how does a burden of proof apply? There's a burden of proof. Well, there's a burden of persuading what the correct interpretation of law is. Here we could easily imagine that this unidentified individual who didn't identify himself in Florida as being an attorney answered legal questions. Those could be a correct analysis, an incorrect analysis. Ultimately, the burden of deciding that was on the state police, and in this record we see nothing other than the answer that we defer to the survey. If we're to agree that the Florida law is not substantially similar, then what should we do? I think that even if this court decides there's a legitimate question, it should be remanded. No, no, that wasn't my question. Okay. My question was, we agree they're not substantially similar. You agree that they are substantially similar, then the state police would be ordered. Saying that they're not. That they are not substantially similar. They're not substantially similar, then what? Well, then the court, I suppose, may deny the appeal, but the whole point is the process still has the fallacy of never allowing the applicant to try to put forward that record. When Josh Myers tried to do that at the administrative hearing, it was completely ignored. I don't understand how records matter to an entirely legal interpretation. Agencies still have to apply the law and interpret it, and the way that applicants who think that that's being misapplied generally have to challenge that, is to have an administrative appeal hearing to present their legal arguments and to get that legal interpretation from the agency. Josh Myers was precluded from doing that. He was precluded from submitting an application, and the circuit court decided that that issue never needed to be addressed. Let me ask it this way. If the state police said, we determined that these are not substantially similar, and therefore you're not entitled to apply, and your client believed he was mistaken, would he have a right to challenge that ruling in circuit court? Yes, he would. But first he's got to be able to receive a final administrative decision, which he never got, because he never got to have a hearing on that issue. Well, if the decision of the state police is, because the state laws are not substantially similar as required for him to apply, he's not eligible to apply, he would be able to have judicial review of that determination in circuit court, where the issue would be, are they substantially similar, and a judge could resolve that legal question and would not need any record, because there are no facts in dispute. Isn't that correct? He wouldn't receive a decision from the state police, as Josh Myers didn't, because Josh was precluded from ever raising the issue to the state police. The decision is, you're not eligible, so we're not going to process your application. That's the decision he receives from the state police. And they explain, because Florida law is not substantially similar. Well, if so, then that's a denial, and under the Administrative Procedure Act, that denial, the Concealed Carry Act itself requires that if he's being denied, they have to give him a written decision to that effect explaining the reasons, and they did not do that. Well, that's a denial on the merits, as opposed to you're not eligible under the statute to even apply, so we're not accepting your application. You're saying that's the same thing as a denial, but it seems to me maybe it isn't. Well, it is a denial, and I don't think there's any practical way to look at that computer program of blocking the application from being completed other than to say you're being denied, while not complying with the Concealed Carry Act requirement that for denials of applications, they have to give a reason, notice, and an opportunity for a hearing. This is how we correct errors. That's why I keep going back to this language that talks about a nonresident may apply if the person is from a state with substantially similar laws. I mean, I'm just wondering, have you gotten over that hump? Well, we believe we have because we believe if we're given a hearing, we can establish that, and the state police didn't ever, by rule, list the states that are not eligible, and that's what they would have to do. So they have to choose a path. We've got also the definition of substantially similar. Is that a rule? That's a rule. And to apply that, then, there would have to be some opportunity for the applicant to say, I'm from a state with laws substantially similar. Give me that opportunity. And that's what's being denied to Josh Meyers. So in short, the state police needed to do an interpretive rule and in the rule list the states. Or if it's procedural, as they say, then allow the application to be submitted. It can be denied, and then Josh Meyers has limited remedies, but he at least has his opportunity to present his argument and get an administrative decision, which is what's required. Thank you, Counsel. I haven't even been watching the clock. Your timing is perfect. You may proceed, Counsel. Good morning, Your Honors. Counsel, may it please the Court. I am Assistant Attorney General Mary Labreck, here representing the defendant. I'm sorry, Counsel. I'm going to ask you to speak up a little bit. That mic is not going to amplify you at all. It's basically just there to help with recording. Okay. I'm sorry. I am Assistant Attorney General Mary Labreck, here representing the defendant appellee, Leo P. Schmitz, Director of the Department of State Police. I'd like to start by addressing the argument that the Department's substantially similar determinations are unpromulgated rules within the meaning of the APA. I just want to point out quickly that Meyers has forfeited this argument because he raised it for the first time in his opening brief on appeal. He has complained about unwritten rules throughout this case, but it has been different all the time, what exactly was supposed to be promulgated. And in any event, the Department did not violate its duties under the Act or the APA. The General Assembly gave the Department discretion under Section 40B of the Act to develop rules about how it was going to make its substantially similar determinations. And if there is any ambiguity about the reading of Section 40B, as Counsel suggests, that's resolved when you look to Section 40C, because Section 40C of the Act says that a resident who has been approved under the process in 40B, so it characterizes Section 40B as about the process, and then it says may apply. So once they have been approved, then the person may apply. As Your Honor suggested, the application comes after the determination. Can you tell me what did the Department do when Mr. Myers applied or attempted to apply? What specifically happened? Well, what specifically happened was that he was unable to complete the computer application because it only accepts entry from a person who is residing in Illinois or one of the states that has been determined to. And he received notice of that in what fashion? Well, he was unable to complete the application. There are things that happen to me on the computer all the time that doesn't let me do what I want to do, but there's no explanation of why I can't do it. I want to know what explanation he received. The source of his problem was not the computer application. That merely reflected the statute. I understand that. I want to know what it said at the bottom of the form when it said you can proceed or it's denied or why it's denied or why you have, we don't like you, you can't come here. You can't apply. I want to know what the words were. As I understand it, there weren't words that were sent to him as part of the application process. He simply was not able to go any further in the program. I don't know what that means. He can't go to the next page or the computer, the screen says out of luck. I believe that when he tried to, there's a toggle box and it has choices of states that you can choose. Right. And he was unable to choose the state that he wanted to choose. Because the state that he wanted to choose wasn't listed there? Or it was grayed out or something. I don't know exactly. It was what? I don't know if it wasn't listed or if it wasn't grayed out. I don't know exactly how that is. What's that word? Grayed out? I'm sorry. I don't know whether there was a full list of states but then you couldn't choose some of them or whether it only listed four states plus Illinois as your choice of state of residence. And those were choices because those were the only ones that had been determined to be substantially similar? That's right. Okay. And so he simply couldn't proceed. And after that point he proceeded to have an e-mail exchange with a department employee. Well, this suggests something different than I thought was the procedural background as described by Mr. Draper. I thought we had a situation where his client, Mr. Myers, applied and then was told you can't proceed. But what you're now suggesting is this was an automatic rejection or not letting him proceed because apparently in advance the department had determined that Florida was not substantially similar. So if you check Florida you can't proceed. Is that what happened here? Right. Either you can't check Florida or something. Yeah, I don't know exactly how it happened. Or Florida's not one that you can check. Right. Because I understand it. Wouldn't it be helpful for the record, I don't know that it makes any difference legally, but so that we can understand the process that we see what the computer screen says. We see a rejected application or an application that wasn't permitted to go any further for whatever reason. I mean, if I was a poor person's affidavit, if I was doing that by hand instead of on a computer, I want fees waived, I did it by hand and I would hand it in, the judge would say, would either stamp it or right there in front of me would say it's denied. You're not eligible. You've got resources. And I'd say, oh, okay. And then I'd have to go out and find my own attorney. I would know that. And that would be part of a record. Here, all that happened is this gentleman says, I couldn't complete the application. And we don't know what it said or what it told. And again, I'm not sure that that matters. But wouldn't it make more sense, even in this computer age, for us to see something in the record on paper that says you can't go any further in this process, you're not eligible, application denied, your state isn't a good state? I'd like to see that just because I'm kind of visual. I suppose perhaps we could grab one of our iPads and go on the site and try it. But, I mean, my understanding from the record is basically he couldn't continue. There was no message whatsoever giving any explanation of why he couldn't continue. But I'm sure he figured out because of the fact that he lived in a state that had been determined to not have substantially similar laws. But my understanding is he just couldn't do anything else. Well, that's right. Within the application process itself. But the department did everything that it was supposed to do under the act in the APA. And there are other places he could have found information, on the department's website, among others. Would the department's website say in a paragraph, these are the only states that we've determined? In the frequently asked questions section of the department's website, it does list. It does list the four states that are deemed substantially similar. And let me tell you about. Counsel, I do want to clarify, though. We have kind of two things going on here. He had his Illinois license canceled. He did eventually end up in front of the circuit court on that issue. But on the issue of his request for a license as a non-Illinois resident, that basically just went nowhere because of the fact that he was residing in Florida. That's right. Okay. So, the department has articulated as much of the procedure as it was practicable to do. It created rules in response to Section 40B's requirement that it develop rules about how it was going to do substantially similar determinations. And it complied with the notice and comment procedures of the APA when it did that. And the rules that it created went through JCAR review. And the department further complied with Section 520 of the APA, which says that when you're exercising a discretionary power, you include the standards by which the agency shall exercise the power stated as clearly and precisely as possible. And the department promulgated a rule defining precisely how it was going to construe the terms substantially similar, that's Section 1231.10 of the Administrative Code. And it promulgated another defining the procedure that it would use. If there was any question about how it was interpreting Section 40B and Section 40C, this Section 1231.110 informs the public that as the department construes that section, applications for a license will only be accepted from persons living in states that it deems to be substantially similar. Okay, now I have a question. I don't know what the four states are, but one that's not on the list, and its laws change. And it goes into effect July 1st, 2018. How quickly is that going to be picked up by the state police? That that is now a state, which it sort of looks like because they've changed their law, would be substantially similar. How is that picked up? Well, the department does its surveys about every two years. And that's kind of a rolling process. Well, that rolling process, if it's two years, would eliminate somebody from Vermont if you don't know that their law has changed. Well, if the department finds out about it, then they will respond. Counsel, I'm not challenging you because I don't expect you to know all the intricacies of how they work inside the state police. But if they know, well, the only way they're going to know is by the survey. And theoretically, you could go two years where people from Vermont would have their applications rejected, even though now the Vermont laws are substantially similar. Would you agree with that? That's possible. Yes, it's possible that could happen. There are informal ways, though. I thought that there was an opportunity in this instance for Mr. Myers to provide additional information or to suggest that a new survey be sent or something like that. Am I remembering correctly? When he was having the conversation via the email, did someone indicate to him that if there had been a change or if he was of the opinion that the laws were substantially similar, a new survey could be sent or received? There was a suggestion that if he thought that the department was misconstruing Florida law, he could ask the department, ask Florida, Florida's department that handled the concealed carry licenses, to communicate with the Illinois department and clear that up. There are informal challenges, I'm sorry, informal channels. Somebody from the state could let the state know out part from the survey. A person who finds out about a provision that has been amended in a state that they want to could also notify the department. The guy in Vermont. Yes, the guy in Vermont. He could notify the department. Now, Mr. Myers did notify the department in this case that he disagreed with his determination, but the department did not agree with his suggestion, that he did not agree that it was in fact substantially similar. So there are ways that that can be handled. It doesn't mean that people will always have to wait for two years in between. And if all else fails, he could bring an action for declaratory judgment, as he's done in this case. So they're not totally left without. Is there a difference? I mean, does it matter that we're talking about people who are residents of other states? I mean, is there a difference in what process or whatever we owe to an Illinois resident versus a non-resident? So you're asking if Illinois residents are treated differently from non-residents? Or vice versa. Well, ultimately they're treated the same. And this is the department's goal. In order to treat them the same, however, the initial procedure has to be a little bit different. Because an important part of the rules that are applied to Illinois residents are rules that allow the department to obtain background information from Illinois residents in the past, and also to monitor them in the future. And this is why they have the rule that the state of residence has to be determined to be substantially similar first, because we've got to have some assurance that we can obtain comparable information on these people to what we can get for Illinois residents, and that we'll be able to monitor them in the future. Let me ask a question. I'm assuming that felons, maybe I shouldn't assume this, but felons are not eligible to receive, to get, concealed care. I believe not. Okay, I'm a felon, and I go online. It's not going to let me go further? Is there a question? They ask me, have you ever been convicted of a felony? Yes. And once I click yes on that, I'm not going to be able to go any further. Or when I get to the bottom of that page, I'm going to be declined, or I can't go any further, or the screen freezes. I don't actually know, Your Honor. Okay, but let's assume that's the case. But the reason I'm a convicted felon is because I was convicted of a very, very small quantity of cannabis possession in 1968. And I should have had my conviction vacated, or I should have gone to court and had something done about it because of the change in the laws where we actually had people in prison for possessing small amounts. And Illinois laws change. So how would I go about explaining or understanding that I would have the right maybe to have that sentence vacated? Can I add something to that? I think the answer is going to be different based on whether or not you are an Illinois resident. If you're not a resident of a state that's substantially similar, you're not even going to get to the box where you check am I a felon or not. You're not even going to be able to go forward. Okay. So I don't believe the form allows room for explaining, but if you feel, I mean if... If I got rejected, I could seek some kind of court action. I should be able to receive a remedy in court if I have these very strange circumstances. Or I have to demonstrate that my conviction was void, if we can still use that word, because of, you know... Because if you're denied as an Illinois resident, you have the right to the hearing. Right? Yes. If you have applied, I'm not sure exactly what happens if you are not able to finish the application. But I'm not sure what happens if you say check yes that you have a felony. But the department is not able to release you from the requirement that you not have a felony, even if you believe that it's wrongful for some reason. You would have to seek relief in some other way. You would have to come to the circuit court and make some other kind of argument. Someone with the Department of State Police must have made a determination in advance of this case, and I guess any other case, that there are only four states that have laws substantially similar to Illinois to make non-residents eligible to apply for an Illinois CCL. That's right. It does this when it receives the survey responses. And then it processes it. And he says that they relied just blindly on what the state says. We don't have information on exactly how the state does this, because a record was not developed on these kinds of facts. A record, as your Honor suggested, has not been developed on very much. But at the same time, we know an entity, i.e. the state police, made this determination, because otherwise those four states wouldn't be listed on the application process to be checked. And we know, for instance, the state of Florida. And that was done in advance. Yes, that was done when they get the response to the survey. They do this ahead of time so that people don't have to wonder. And all of these things that the Department of State Police does, it notified the public of in advance, when it promulgated its rules. As I was suggesting, there's the rule that says not only what the definition of substantially similar is, but it tells you that applications will only be accepted. It tells you that the process is going to be done through surveys of other states. And it tells you that it's going to inform the public of the determinations through its website. Maybe the question I asked Mr. Draper is, I was incorrect in my hypothetical. You're talking about a survey. Is there a factual component of this survey? Because my question is to Mr. Draper, assume that these are questions of law, but is there some factual aspect that the state police has to ask and get information back? There is a kind of factual aspect of it. One is, in a sense, although they're dealing with questions of law, in a sense, there are facts that the state has to apply its definition of substantially similar to. It has to apply them to what the state's laws are at a particular time. And it's also factual in another sense, in that one of the things that the substantially similar determination asks for is whether the states report to NICS and whether they report certain things through the NLETS method of transmission, and whether states' reports aren't always contained within formal statutes or regulations. So there may be some factual components. It's largely legal. But there's no need for a hearing because even though there's some factual components, none of it depends on Meyers or any other potential applicants' individual circumstances. Well, I'm wondering about your representation that the questions are factual. They're all basically questions about how that state, their procedure and what they report. They're basically yes or no questions, right? Yes. They don't call for a person to go into detail about things or what happened or when this happened or what's the basis. For example, the first question, does your state issue a concealed carry license? Next question, does your state participate in reporting that via the national law enforcement teletype system? So they're not really calling for facts other than what is the procedure. Right. It's procedural facts. It's no facts having to do with any individual circumstances. And this is why it's not the usual kind of adjudication situation. Because you're applying the law to facts that have nothing to do with the individual. And you also aren't, because this is done before there's even an application. This is not part of any proceedings before the case. So it's not adjudication. Counsel, I'm sorry. I know I asked you the question and I'm supposed to be watching the clock. I'll let you finish your thought, but you are out of time at this point. Well, okay. I just want to say that the department did everything that it was required to do under the Act and the APA. There was nothing secretive or unfair about this process because everything was set forth in the regulations. There were opportunities for the public to challenge on the decision to only accept applications. They could have challenged the survey process. None of this was done. And he was able to get all the information that he needed. And he was able to get copies of the survey questions through FOIA. And he was ultimately able to bring a declaratory judgment to challenge the department's determination. He lost on the merits there. And the department's substantially similar determinations are not rules because they do not create new standards. They're not independent rules. They simply apply laws to the unique facts of a particular state's statutes, regulations, and practices at a particular time. Thank you, counsel. Any rebuttal, Mr. Draper? Yes, if I may, please. And I can answer some of the questions that, especially Justice Connick, you were asking about the application process. Let me start by asking if this is a case where the law is being applied to some, and I'm going to call it record, because it's less factual, although there are something like the reporting requirements. The question is, what law? Because the Illinois State Police asked six simple yes or no questions in a questionnaire and relied on that solely. We have no indication. In fact, we have every indication that's all that they did. There was no definitive analysis of Florida law, and Josh Myers was precluded from developing a legal record of what Florida law was. Why it's important is it was changing. Do we have no indication, or is the record silent as to that? They told Josh Myers that we're relying on the survey. It did not ever indicate anything differently. They said if you want a different outcome, get Florida to send a different set of answers in. We know from the record that there were about four states that never answered the 2015 survey. Those people were disqualified, not because the state police looked at the laws of those states. They refused to do anything and disqualified them merely upon some bureaucrat in the state deciding not to send a response back. Well, that's the government. That's the way government works sometimes. I mean, I wouldn't certify a state that didn't bother to respond if I was using a survey. I wouldn't go do independent research for the state of Mississippi or for the state of New York if I send a survey to the right person. But that's what the statute required. The statute required the state police to make that analysis. How can I analyze that which the state of the person's residence won't comply or respond to what I have asked them? Westlaw or Lexis or look up their statutes. The burden is on me. The statutory burden was placed there by the General Assembly directing the state police to, by rule, make the determination which states have laws that are similar. And it goes to your question about what about Vermont and this changing law. Even in this record, the response was that Florida was indeed changing its law. And that resulted in no further inquiry other than that e-mail directive to Mr. Meyer saying get the Florida officials to give us different answers. All of the reasonable inferences are they were relying solely on that. In 2015, they got different responses. They even asked different questions. And then just immediately announced different results. There's no indication and every indication is that the state police did not analytically look at any law. The problem is they didn't let Josh Myers apply and give it to them. It would be his burden to persuade them. And that's an appropriate use of procedural rules which is exactly what they've argued were promulgated. The public comment was on procedural rules. There was no opportunity for the public to comment on the survey instruments. They weren't developed until the rules were promulgated. The rules didn't say we're going to ask by survey the following questions. Which is why arbitrarily in 2015 we get a different set of questions. And it's not in the record, but I know that no questionnaires have gone out since 2015. So we're now more than three years after the fact not finding out whether Vermont's laws have changed. And the judgment in this case agreed with the state police argument. Josh Myers cannot even apply and therefore he can't get this argument developed. And since he can't apply, he's not entitled to argue that the rules weren't followed. Section 10F of the Act says the department shall deny an application if the applicant fails to meet the requirements and must notify the applicant stating the grounds and giving him his right to appeal. If Josh Myers didn't qualify because he lived in a non-similar state, Section 10F required the department to say that. So back to the question on the computer screen. Josh Myers testified that, and counsel used grayed out, that was his word. Some states were bold and clearly you could click and some were in that light gray that you know on computer screen sometimes you can't click. Florida was there, but you couldn't click it. And if you didn't click it, it didn't go to the next step. And you couldn't hit submit and you couldn't print because the department won't allow a paper application to even start. What if I was 14 and lived in Florida? Yes. I assume I can't get a concealed carry permit in Illinois even if maybe the answer is yes in Florida. I wouldn't be eligible to apply in Illinois. Right, and if the laws aren't substantially similar, you would be disqualified. Well, what would the department have to do to disqualify me and not even let me finish completing the application? What would they have to do if I said I was 14? I think when somebody claims I qualify, they should be allowed to submit an application. The department follows the act because agencies have to do what the law says. And the law says if an applicant fails to meet requirements, the department must notify the applicant stating the grounds and stating his right to appeal. And that assumes he's an applicant. That he's an applicant. And that term's not defined anywhere. An applicant is somebody who comes and asks. And it's no burden on the state police to deny somebody who's not qualified who's 14 or who has a felony conviction. But when it comes to the question of which laws are substantially similar, it appears that the Illinois State Police has no record upon which they made that decision other than a survey instrument. That changes arbitrarily, which is inconsistent with the APA's requirements that, as counsel said, exercising discretion, you must adopt the rule. Thank you. Thank you, counsel. We'll be in recess. This matter will be taken under advisement.